## CONTINUATION OF APPLICATION FOR SEIZURE WARRANT

I, Matt Warzywak, being first duly sworn, do depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I am a Task Force Officer with the Drug Enforcement Administration, ("DEA"), a position I have held since September 2019. I am also a Detective Sergeant employed by the Michigan States Police Department (MSP) since 2004.  As part of my duties, I investigate criminal violations of the federal and state drug trafficking laws. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances. I have received training in the area of drug investigations, money laundering, financial investigations, and various methods that drug dealers use in an effort to conceal and launder the proceeds of their illicit drug trafficking enterprises. I have participated in investigations that have led to the issuance of search warrants involving violations of drug laws. These warrants involved the search of locations, including residences of targets, their associates, and relatives; storage facilities; smartphones; and computers. Evidence searched for, and recovered, in these locations has included controlled substances, records pertaining to the expenditures and profits realized therefrom, monetary instruments, firearms, and various assets that were purchased with the proceeds of the drug trafficking. In connection with my official duties, I investigate criminal violations of Title 21, United States Code, Sections 841, 843, 846, 952 and 960,

among other codified narcotics crimes, as well as violations of Title 18, United States Code, Sections 1956 and 1957, and Title 31 United States Code, Section 5332.

2.      The statements contained in this Continuation are based in part on: (a) my personal participation in this investigation; (b) information provided by other federal and state law enforcement officers, including members of the Lansing Police Department and Michigan State Police; (c) surveillance reports; (d) criminal history records; (e) information from confidential informants; and (f) my training and experience and the training and experience of other law enforcement agents.  This affidavit is submitted for the limited purpose of establishing probable cause in support of this seizure warrant application.  Thus, it does not contain every fact known by me or the United States regarding this investigation.

## PROPERTY TO BE SEIZED

3.      This affidavit is submitted in support of an application for a criminal forfeiture seizure warrant pursuant to 21 U.S.C. § 853(f) and a civil forfeiture seizure warrant pursuant to 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b) authorizing the seizure of the following United States Currency:

        a. $76,357 United States Currency (Seized from 215 S Homer Street, Lansing, MI 48912).

        b. $5,925 United States currency (Seized from 925 Westmoreland Ave, Lansing, MI 48915).

        c. $468,340 United States currency (Seized from 1530 Lake Lansing Road, Lansing, MI 48912; Prime Storage Unit #11)

collectively, the Subject Currency. The Subject Currency is currently in the possession of the Tri-County Metro Narcotics Team in Lansing, Michigan.

4. Based on the investigation of Kevin DUNSON and others as set forth below, there is probable cause to believe that the Subject Currency would, in the event of a criminal conviction, be subject to forfeiture and that, because the Subject Currency can be readily removed, a protective order would not be sufficient to assure the availability of the Subject Currency for forfeiture. Further, the acts or omissions giving rise to the forfeiture occurred in the Western District of Michigan and a civil forfeiture action against the aforementioned Subject Currency may be properly brought in this district.

## APPLICABLE STATUTES

5. Title 21 U.S.C. § 853 provides for the criminal forfeiture of the proceeds and facilitating property of controlled substance violations. A person who is convicted of a controlled substance violation, where the violation is punishable by more than a year imprisonment, "shall forfeit to the United States, irrespective of any provision of State law — any property constituting, or derived from, any proceeds the person obtained, directly or indirectly, as the result of such violation," and any property "used or intended to be used, in any manner or part, to commit, or to facilitate the commission of such violation." 21 U.S.C. §§ 853(a)(1) and 853(a)(2).

6. Similarly, 21 U.S.C. § 881(a)(6) provides for the civil forfeiture of the proceeds and facilitating property of controlled substance violations, specifically:

> The following shall be subject to forfeiture to the United States and no property right shall exist in them:

3

> All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical in violation of this subchapter, all proceeds traceable to such an exchange, and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of this subchapter.

## SUMMARY OF INVESTIGATION

7. This continuation is based on the Michigan State Police (MSP) Tri-County Metro ("TCM") Narcotics team's (with the support of DEA) investigation into the drug trafficking activities of Kevin DUNSON and his criminal associates, including SUBJECT A and SUBJECT B,[1] as well as other persons known and unknown. Together, these targets are part of a Drug Trafficking Organization ("DTO") operating throughout the state of Michigan including the metropolitan cities of Lansing and Detroit.

8. In June of 2024, MSP TCM investigators initiated an investigation into the DUNSON DTO. Through interviews, physical and covert surveillance, administrative subpoenas and trash pulls, investigators learned that the Kevin DUNSON DTO was operating out of four greater Lansing area locations: 215 South Homer Street, Lansing, Michigan; 925 Westmoreland Avenue, Lansing Michigan; 1530 Lake Lansing Road, Lansing, Michigan Units #010 and #011 (a storage rental facility). Additionally, investigators identified DUNSON as the leader/organizer of the Lansing-based narcotics operations at these locations and found that DUNSON was assisted by SUBJECT A, aka "Lo" and SUBJECT B, aka "Chauncey".

---

[1] The identity of SUBJECT A and SUBJECT B is known to law enforcement. Their real names have not been used because thus far, neither have been charged.

4

9. The culmination of this investigation resulted in the October 29, 2024, execution of four search warrants. The warrants associated with 215 S. Homer St, Lansing, Michigan; 925 Westmoreland Avenue, Lansing Michigan; and 1530 Lake Lansing Road, Lansing, Michigan Unit #010 were approved/signed by State of Michigan Judicial District 54a Judge Cynthia Ward. The warrant for 1530 Lake Lansing Road, Lansing, Michigan Unit #011 was approved/signed by State of Michigan Judicial District 55th Magistrate Judge Stefani Godsey. The searches yielded a large amount of narcotic pills (Oxy, Xanax etc.) that are currently pending testing, 6.26 kilograms of suspected methamphetamine, .5 grams of suspected fentanyl, 48.97 grams of suspected cocaine base, 2.17 kilograms of suspected cocaine HCL, 1.42 grams of suspected heroin, and bulk currency totaling $550,622 (the Subject Currency). Additionally, law enforcement seized 5 firearms. The firearm seized from DUNSON's residence at 215 S Homer Street was reported stolen out of Detroit, Michigan. Substances that were seized were field tested, with positive results, and were sent to the DEA Laboratory for official identification. Those results are still pending as of the submission of this seizure warrant application.

10. On October 31, 2024, United States Magistrate Judge Ray Kent issued an arrest warrant, via complaint, for DUNSON on charges of possession with intent to distribute 500 grams or more of methamphetamine and cocaine and felon in possession of firearms. *United States v. Dunson*, 1:24-mj-00478 (RK). On November 19, 2024, the grand jury returned an Indictment that charged Dunson with six counts: 1) possession with intent to distribute cocaine seized from his residence at 215 S. Homer St.; 2) felon in possession of a firearm seized from his residence at 215 S. Homer St.; 3) possession with

5

intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, for methamphetamine seized from unit #10 at the Prime Storage facility on Lake Lansing Rd.; 4) felon in possession of a firearm for a AR rifle seized from unit #10 at the Prime Storage facility on Lake Lansing Rd.; 5) possession with intent to distribute 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine and 500 grams or more of a mixture or substance containing a detectable amount of cocaine, for drugs seized from unit #11 at the Prime Storage facility on Lake Lansing Rd., and 6) felon in possession of firearms for two pistols seized from unit #11 at the Prime Storage facility on Lake Lansing Rd. *United States v. Dunson*, 1:24-cr-177 (JMB).

11. DUNSON's criminal history includes state convictions for Felony Controlled substance 2005, 2009, 2010 and 2010; Felony Assault with Dangerous Weapon 2001; Felony Weapons in 2005, 2015, 2015, and 2015; and Felony Resist/Obstruct Police 2022.

**PROBABLE CAUSE TO SUPPORT SEIZURE OF THE SUBJECT CURRENCY**

12. Beginning in June of 2024, investigators of MSP TCM identified members of the DUNSON DTO from information provided via an interview of a source of information (SOI) and a confidential source. TCM was provided information from a source of information (SOI) regarding a narcotics dealer in the Lansing area. The SOI described the dealer as a black male that goes by "D" who sells both heroin and methamphetamine. SOI stated that "D" has someone that works for him named Chauncey that will deliver narcotics to people. SOI stated that "D" or Chauncey drives

6

a black Infinity bearing Michigan registration 96AAG9 to deliver narcotics. SOI stated that they have also seen "D" in a red vehicle. SOI stated that they have observed the black Infinity drop off an ounce of methamphetamine to 2817 W Willow St. Lansing, Michigan.

13. On June 12, 2024, investigators interviewed confidential source CS # 121120268[2] (CS) who stated they knew of an individual that goes by "D" who sells narcotics in the area. CS described "D" as a black male who drives a black SUV. CS stated that "D" has two individuals deliver for him named "Chauncey" and "Lo". The CS stated they have seen "D" several times a week deliver and sell narcotics in the parking lot of Mid-Michigan Recovery Services, 913 Holmes Road in Lansing, Michigan.

14. Based on the information provided by the SOI and CS, in combination with open source and law enforcement indexes, investigators were able to identify the individuals as Kevin DUNSON, SUBJECT A aka Lo, and SUBJECT B aka Chauncey. Additionally, investigators were able to locate the following properties as associated with the Kevin DUNSON DTO: 925 Westmoreland Avenue, Lansing, Michigan; 215 South Homer Street, Lansing, Michigan; and 1530 Lake Lansing Road, Lansing, Michigan (Prime Storage, a commercial storage facility).

15. Between June of 2024 and October of 2024, investigators conducted physical and covert surveillance of 925 Westmoreland Avenue, 215 S. Homer Street,

---

[2] The confidential source is currently working for monetary consideration in 2024. The CS has proven credible and reliable in the past by providing information that has led to several successful controlled purchases and provided accurate information that was verified independently. The CS has a criminal history that includes state arrests for controlled substances in August of 2022, January of 2023 and March of 2023.

7

1530 Lake Lansing Road (Prime Storage) and the movements of DUNSON, SUBJECT A, and SUBJECT B. During that time period investigators committed many hours of surveillance with the following results reported/observed.

    a. Investigators observed DUNSON, and members of his DTO depart directly from 925 Westmoreland Avenue and conduct suspected hand-to-hand[3] narcotics exchanges with narcotics users. Investigators observed this on approximately 23 different occasions. DUNSON, SUBJECT B and SUBJECT A were each involved in at least some of these 23 suspected hand-to-hand exchanges.

        i. On August 19, 2024, investigators observed a suspected hand-to-hand sales between SUBJECT B, ("Chauncey") and the occupants of a second vehicle. Following the sale, a marked police vehicle conducted a traffic stop of the purchasers, which resulted in the seizure of approximately two ounces of methamphetamine and six bindles of heroin marked with the letters "Z" or "N". One of the occupants of the stopped vehicle confirmed that they purchased the narcotics from an individual they knew as Chauncey.

---

[3] Hand-to-hand is a commonly utilized term meaning the exchange of user quantities of narcotics for bulk US currency between a retail narcotics distributor and the customer/user of the narcotics.

8

  b. Investigators observed travel between 925 Westmoreland Avenue, Prime Storage located at 1530 Lake Lansing Road, and 215 S. Homer Street that was indicative of the transportation and storage of narcotics and/or narcotics proceeds.

  c. Investigators observed the regular use of rental vehicles by DUNSON and members of the DUNSON DTO when conducting activities in furtherance of the DTO's mission.

16. During the same time frame, investigators conducted a number of searches from the discarded residential trash placed on the curb at 925 Westmoreland Avenue and 215 S. Homer St. Investigators conducted six separate trash pulls associated with the residence at 925 Westmoreland Avenue. During each of the trash pulls from Westmoreland Avenue, investigators located narcotics packaging including kilogram packaging and smaller packaging indicative of retail distribution. While processing the packaging, investigators found the kilogram-sized wrappings were washed/rinsed in an effort to conceal the contents of the packaging. For each trash pull, investigators obtained a positive field test for the presence of cocaine on the packaging. Investigators also located the following items indicative of retail narcotics distribution:

  a. Stacks of cut Michigan Lottery tickets. Based on prior training and experience, investigators know these items are commonly used by a narcotics dealer who will use cut lottery tickets and then fold them to create a bindle to package heroin for retail sale.

b. Vacuum sealed bag with duct tape. Based on prior training and experience, investigators know drug dealers will commonly utilize vacuum sealed bags to transport larger quantities of narcotics in an attempt to evade law enforcement detection. Additionally, duct tape isw used to help secure and conceal the narcotics during transport

c. Various sizes of plastic bags. A large quantity of plastic bags of several different sizes were located. Some of the bags contained knotted portions. These knotted portions are representative of drug traffickers tying off user quantities of narcotics within the bag for retail sale.

d. A rental agreement from Enterprise Rent-A-Car located at 6001 S Cedar St, Lansing, MI 48911. The rental agreement listed Kevin DUNSON as the primary driver and SUBJECT B as an additional driver. The rental term covered the period from May 6, 2024, to May 24, 2024, and identified the rental vehicle as a 2024 Hyundai Tucson bearing registration EUE6318.

17. Investigators conducted two additional trash pulls from the trash placed outside 215 S. Homer Street. During these searches, investigators did not locate any drug paraphernalia. However, on the first trash pull investigators located a discarded medication bottle prescribed to DUNSON. On the second trash pull investigators located a medication box prescribed to DUNSON and a vehicle rental

10

agreement assigned to Tiffany Hudson for a 2024 Dodge Durango that TCM had surveilled DUNSON driving on multiple occasions.

18. During the aforementioned surveillance period, investigators observed DUNSON travel to/from Prime Storage (1530 Lake Lansing Road, Lansing, Michigan) on three different occasions. Prime Storage is a fenced in facility with restricted access for entry or exit. With the assistance of, DEA, investigators served Prime Storage with an administrative subpoena in requesting information related to the access code utilized when DUNSON had arrived and utilized the key pad to open the gate on October 14, 2024. In response, Prime Storage identified unit #010 as rented by SUBJECT B. Each unit has a unique code to enter onto the property prior to gaining access to the rented unit. Prime Storage identified the gate code associated with unit #010 as being utilized on 22 different occasions between September 14, 2024, and October 14, 2024, to allow the renter, or other member of the DUNSON DTO, access to the storage facility. Investigators believe that it is common for drug dealers to utilize a storage facility to store narcotics, money or other items they attempt to conceal from law enforcement. It is also common for drug dealers to use a different name when obtaining a storage unit to conceal their identify from law enforcement. It is also uncommon for individuals to visit a storage unit this often in a 30-day period.

19. At the culmination of the aforementioned surveillance period, investigators sought to search the locations associated with the narcotics distribution of the DUNSON DTO. On October 28, 2024, state search warrants were authorized

by Judge Cynthia Ward of the 54a District Court in Lansing, Michigan for the following locations:

      a. 925 Westmoreland Avenue, Lansing, MI 48915

      b. 215 S. Homer Street, Lansing, MI 48912

      c. 1530 Lake Lansing Rd, Lansing, MI 48912, Unit #010

20. On October 29, 2024, MSP TCM detectives, DEA Special Agents, the Lansing Police Department's Special Operation Section and members of the Lansing Police Department (LPD) START team executed the search warrants for the two residences and storage unit. During the execution of the warrants, investigators detained DUNSON (located within the residence of 215 S. Homer Street) and SUBJECT A (located within the residence of 925 Westmoreland). Each subject was transported to the LPD Operations Center for interview. While searching the residence located at 215 S. Homer Street, investigators located a fraudulent Michigan's Driver's License utilizing the name "Gary Jason Wasman" (16220 Maddelein St. Detroit, MI 48205) and last four numbers of the driver's license *6859 with a picture of Kevin DUNSON. Investigators made contact with Prime Storage management who advised that the person who had rented unit #10 had also rented unit #011 under the name "Gary Wasman" (16220 Maddelein St. Detroit, MI 48205) having the last four numbers of driver's license *6859. A search warrant was authored by investigators of MSP TCM for the search of the storage unit #011. On the same date the state search warrant was authorized by Magistrate Stefani Godsey of the 55th District Court in Lansing, Michigan.

21. During the execution of search warrants for 925 Westmoreland Ave, 215 S. Homer Street, and both storage units (#010 and #011) located at 1530 Lake Lansing Road, investigators located significant amounts of narcotics, U.S. Currency and a firearm at each location. The searches yielded large amounts of suspected narcotic pills (Oxy, Xanax etc.), 6.26 kilograms of suspected methamphetamine, .5 grams of suspected fentanyl, 48.97 grams of suspected cocaine base, 2.17 kilograms of suspected cocaine HCL, 1.42 grams of suspected heroin, and bulk currency totaling $550,622 (the Subject Currency) of drug proceeds and/or cash that appeared to be used to facilitate drug trafficking. Additionally, 5 firearms were seized, with one of the firearms from 215 S Homer Street being stolen out of Detroit, Michigan. Additionally, investigators located 7 cellular phones and two tablets.

22. Inside 215 S Homer St in Lansing, Michigan Kevin DUNSON and Raquel Martinez were located in the south-east/middle area of the residence. They were the only individuals inside at the time of the search. Raquel Martinez advised that she has lived at 215 S Homer Street for approximately a month and is on the rental agreement. Investigators were advised by DUNSON that he is currently living at 215 S Homer Street. Investigators located approximately 19.25 grams of cocaine HCL that field tested positive in the southeast/middle bedroom inside of the south bedside table drawer. An FN 5.7 caliber handgun stolen out of Detroit, Michigan was located in the southeast/middle bedroom, inside the north bedside table drawer. Investigators located $119 inside the southeast/middle bedroom in Kevin DUNSON's pants. Investigators located $70,073 in the southeast/middle bedroom underneath

the bed. Investigators located $6,165 in a black Cadillac XT6a parked in the driveway located in the back seat inside of a black backpack.

23.   Investigators searched the residence at 925 Westmoreland Ave in Lansing, which was the suspected drug stash house for Kevin DUNSON, SUBJECT B and SUBJECT A. SUBJECT A was located by investigators inside the residence in the north east bedroom on the bed. No other subjects were present. Investigators located evidence of a large distribution operation for narcotics trafficking at 925 Westmoreland Ave with many suspected bags of narcotics located. These narcotics are currently at the DEA Laboratory for testing. Suspected narcotics were located inside the residence, in the garage, and in a 2024 Chrysler Pacifica in the driveway to the north of 925 Westmoreland Ave. A narcotics metal press[4] was also located in the kitchen. Investigators were able to field test many of the suspected narcotics with the following results: 1,734.25 grams of methamphetamine; .5 grams of fentanyl; and 48.97 grams of cocaine base. Investigators located $4,920 inside the north east bedroom inside a black backpack. Investigators located $1,005 in the 2024 Chrysler Pacifica underneath the window controls. Inside the van under the window controls, investigators located approximatley 2.42 grams of suspected fentanyl, 20 unknown pills, and 2.66 grams of cocaine base. The 2024 Chrysler Pacifica (MI-11912RF) was listed in the warrant to be searched.

---

[4] A metal press is utilized by narcotics traffickers to consolidate their drugs for shipping/distribution but also to add a mixture or "cut" to their product to manufacture more of a narcotic that isn't as potent as the original yet the metal press will make the drug (brick shaped) so that the retail buyer believes its in pure or original form.

14

24. Investigators searched Prime Storage, Unit #10 located at 1530 Lake Lansing Road in Lansing, Michigan. Investigators seized a Consumers Energy bill addressed to Kevin DUNSON for the address 925 Westmoreland Ave that was located in the same bag containing approximately 303.52 grams of suspected methamphetamine, which field tested positive. Investigators seized a Bushmaster 5.56 caliber AR rifle in a black duffle bag on the floor and a Blu-Flip phone was located in storage Unit #10 in a brown paper bag. Furthermore, the key to open Unit #10 was found inside 215 S. Homer Street on a key ring, where law enforcement encountered DUNSON.

25. Investigators searched Prime Storage located at 1530 Lake Lansing Road, Unit #11 in Lansing, Michigan. Unit #011 was rented by Kevin DUNSON under the alias "Gary Wasman". The search yielded approximately 2 kilograms of a substance that field-tested positive as cocaine HCL, approximately 4 kilograms of a substance that field-tested positive as methamphetamine, a Glock .45 caliber handgun, a Draco 7.62 handgun, a large quantity of miscellaneous pills; approximately 1.42 grams of heroin, and $468,340.00 in cash. Investigators also found Kevin DUNSON's Michigan Department of Corrections Discharged Prisoner identification card from a prior prison stint and Kevin DUNSON's Chase/Visa banking card. Notably, no other forms of identification were found in Unit #011. The key to Unit 011 was found inside 215 S. Homer Street on the same key ring that contained the key to Unit 010.

26.     Investigators interviewed Raquel Martinez at 215 S Homer Street. Investigators advised Raquel Martinez of her Miranda Rights and she agreed to speak.  Raquel Martinez advised that she has lived at 215 S Homer Street for approximately one month and is on the rental agreement.  She further advised that DUNSON stays at the residence several times a week.  Raquel Martinez denied ownership of the firearm located at the residence and stated that the firearm located in the side table belonged to DUNSON.  Raquel Martinez denied any knowledge of the cocaine located at the residence and denied ownership of the United States Currency located by investigators underneath the mattress, which totaled $70,073. Martinez signed a disclaimer of ownership & waiver of rights to notice of seizure claiming no ownership of the money underneath the mattress and the $6,165 located in the black Cadillac rental in the driveway.

27.     Investigators also interviewed DUNSON.  They advised DUNSON of his Miranda Rights and he agreed to speak.  DUNSON stated that he is currently living at 215 S Homer Street and lives there with Raquel Martinez.  DUNSON stated that he is currently unemployed and he could not remember the last time he was employed.  DUNSON did not want to talk to investigators about the firearm at 215 S Homer Street and claimed to have no knowledge of the cocaine.  DUNSON advised that 925 Westmoreland Ave was not his residence and he couldn't remember the last time he had been there.  This statement contradicted what investigators had been observing on surveillance.  Investigators asked DUNSON about the $70,073 cash seized from underneath the bed at 215 S. Home to which he initially denied

16

knowledge. When questioned further by investigators, DUNSON said he did not want to talk about the cash. DUNSON stated that he was driving the Cadillac that was located in the driveway, which was rented by his sister "Tiffany". The keys for the black Cadillac were located inside the residence at 215 S Homer Street on the same key ring as the two storage unit keys that accessed Prime Storage Units #10 and #11.

28. Investigators have not identified any lawful job or other legitimate source of income for DUNSON, SUBJECT A or SUBJECT B.

29. The Subject Currency has been in the custody of the Tri-County Metro Narcotics team since seizure on October 29, 2024 pursuant to the state search warrants.

**CONCLUSION**

30. Based on the information contained in this affidavit, there is probable cause to believe that the Subject Currency constituted, or was derived from, proceeds obtained, directly or indirectly, as the result of drug trafficking, in violation of 21 U.S.C. § 841(a)(1) and was used or, or intended to be used, in any manner or part, to commit, or to facilitate the commission of violations of the Controlled Substances Act. The Subject Currency is therefore subject to criminal forfeiture pursuant to 21 U.S.C. § 853(a)(1) and (2) and civil forfeiture pursuant to 21 U.S.C. § 881(a)(6). I submit that probable cause exists that a restraining order under 21 U.S.C. § 853(e) would be insufficient to ensure the availability of the Subject Currency for forfeiture in the event of conviction due to the fungibility of cash and the ease in which cash may be moved. A seizure warrant will authorize DEA

to take custody of the cash and process it for federal forfeiture. I note that the cash is currently listed in a forfeiture allegation of the Indictment that was returned in *United States v. Dunson*, 1:24-cr-177 (JMB). Accordingly, I request a criminal seizure warrant pursuant to 21 U.S.C. § 853(f). I also request a civil seizure warrant pursuant to 21 U.S.C. § 881(b) and 18 U.S.C. § 981(b).